IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS AND GASFITTERS LOCAL 5 RETIREMENT SAVINGS FUND, *et al.*, | * * * * |
| Plaintiffs, | * * |
| v. | *   Civil Action No. TDC-25-01249 * |
| MAGOTHY MECHANICAL LLC, | * * |
| Defendant. | * |

*******

### REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Motion for Entry of Default Judgment" and memorandum of law in support thereto, (ECF Nos. 11, 12), filed by the Plaintiffs: (a) Trustees of the Plumbers and Gasfitters Local 5 Retirement Savings Fund; (b) Trustees of the Plumbers and Pipefitters Apprenticeship Fund; (c) Trustees of the Plumbers and Pipefitters Vacation Fund; (d) Trustees of the Communication and Productivity Fund; (e) Trustees of the Industry Promotion Fund; (f) Trustees of the Plumbers and Pipefitters Medical Fund; (g) Trustees of the United Association National Pension Fund; (h) Plumbers Local Union No. 5; (i) Trustees of the International Pension Fund; and (j) Trustees of the International Training Fund. Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, ("ERISA") to recover delinquent contributions and related relief from Defendant Magothy Mechanical LLC, formerly known as Bernward Mechanical & Construction Solutions ("the Defendant"). (ECF No. 1, "Complaint").

Pursuant to 28 U.S.C. § 636, and Local Rule 301 (D. Md., Dec. 1, 2025), the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 13). I do not believe that a hearing is necessary. *See* Local Rule 105.6 (D. Md., Dec. 1,

2025). For the reasons set forth below, I ultimately recommend that Plaintiffs' "Motion for Entry of Default Judgment" be **GRANTED**, and that damages be awarded as set forth herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. *Local 5 Benefit Funds*

Plaintiffs are Trustees and the authorized collection fiduciaries and agents of the Plumbers and Gasfitters Local 5 Retirement Savings Fund; Plumbers and Pipefitters Apprenticeship Fund; Plumbers and Pipefitters Vacation Fund, and Plumbers and Pipefitters Medical Fund (collectively, "Local 5 Benefit Funds"), which were established pursuant to executed agreements binding the parties to terms of the Collective Bargaining Agreement and Restated Trust Agreements and amendments related thereto (collectively, "Trust Agreements") and the "Employer Guidelines for the Benefit Trust Funds" ("Guidelines"). (*See* Complaint ¶¶ 1-4; ECF Nos. 12-1 ¶¶ 3-4; 12-1, Exhibits 1, 9).

#### 2. *National Benefit Funds*

Plaintiffs are Trustees and the authorized collection fiduciaries and agents of the United Association National Pension Fund (formerly known as the Plumbers and Pipefitters National Pension Fund) and International Training Fund (collectively, "National Benefit Funds"), which were established pursuant to executed agreements binding the parties to terms of the Trust Agreements and Guidelines. (*See* Complaint ¶¶ 7-8; ECF Nos. 12-1 ¶¶ 5, 27; 12-1, Exhibits 2, 9).

#### 3. *Industry Funds*

Plaintiffs are Trustees and the authorized collection fiduciaries and agents of the Communication and Productivity Fund and the Industry Promotion Fund (collectively, "Industry Funds"), which were established pursuant to executed agreements binding the parties to terms of the Trust Agreements and Guidelines. (*See* Complaint ¶¶ 5-6; ECF Nos. 12-1 ¶¶ 6-7; 12-1, Exhibits

2

3, 9).

    4. *Local Union No. 5*

Plaintiff Plumbers Local Union No. 5 ("Local Union No. 5") is "an unincorporated labor organization as defined in § 2(5) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 152(5)." (*See* Complaint ¶ 9; ECF Nos. 12-1 ¶ 9; 12-1, Exhibit 4).

    5. *Agreements Related to Contributions and Working Assessments/Dues to the Plaintiffs*

On June 28, 2021 and January 15, 2024, Defendant executed Letters of Assent (collectively, "the Agreement"), which bound it to the terms of Collective Bargaining Agreements related to the Local 5 Benefit Funds, National Benefit Funds, Industry Funds, and Local Union No. 5. (Complaint ¶¶ 14-17; ECF Nos. 12-1 ¶¶ 10-12, 14-17; 12-1, Exhibits 5-6, 9). By signing the Agreement, Defendant acknowledged that it is bound by the terms and conditions of the Trust Agreements and Guidelines. (*Id.*). Specifically, Defendant agreed to make monthly contributions to the Local 5 Benefit Funds, National Benefit Funds, and Industry Funds on behalf of its union member employees, as well as to keep records and submit monthly reports to the Local 5 Benefit Funds, National Benefit Funds, and Industry Funds of the hours worked by those covered employees. (Complaint ¶¶ 16-17; ECF Nos. 12-1 ¶¶ 10-12, 14-18; 12-1, Exhibits 5-9).

The amounts of the monthly contributions to the Local 5 Benefit Funds, National Benefit Funds, and Industry Funds were based on the hours worked by the Defendant's employees. (*Id.*). In order to help the Plaintiffs track the contribution amounts due to the Local 5 Benefit Funds, National Benefit Funds, and Industry Funds, the Trust Agreements and Guidelines required the Defendant to provide monthly "remittance reports" or "contribution reports" alongside all payments due. (*Id.*).

If the Defendant failed to timely submit contributions, forward working assessments/dues, and/or reports, the Trust Agreements, the Amendments thereto, and the Guidelines stipulated that various penalties may apply. In particular, the Plaintiffs may collect unpaid contributions, unpaid working assessments/dues, and the following based on the delinquent contributions and working assessments/dues: (1) liquidated damages if the contributions are 60 days late or more; (2) varying rates of interest, compounded monthly; and (3) attorney's fees and costs incurred in collecting the delinquent amounts. (Complaint ¶¶ 16-17, 25-29, 32, 33, 38; ECF Nos. 12-1 ¶¶ 22-23, 26-30, 33, 35, 39-40; 12-1, Exhibits 1-5, 9).

B.  **Procedural Background**

On April 14, 2025, Plaintiffs filed a Complaint against the Defendant alleging breach of the Trust Agreements and Guidelines established by the Local 5 Benefit Funds, National Benefit Funds, Industry Funds, and Local Union No. 5. Plaintiffs are seeking to collect unpaid contributions and working assessments/dues allegedly owed to the Local 5 Benefit Funds, National Benefit Funds, Industry Funds, and Local Union No. 5 for work performed. Plaintiffs also seek to collect "[c]ontributions, if any, that become due after the filing of this lawsuit and up to the date of judgment, plus interest and liquidated damages on any such [c]ontributions;" in addition to "costs and attorneys' fees." (Complaint, pp. 10-11).

On April 22, 2025, an affidavit of service was filed reflecting that service of process had been effectuated upon the Defendant on April 21, 2025. (ECF No. 6). Defendant failed to file a responsive pleading within the 21-day period required by Federal Rules of Civil Procedure 4 and 12, namely by May 12, 2025.

On May 21, 2025, Plaintiffs filed a "Request for Clerk's Entry of Default," against the Defendant. (ECF No. 7). On June 5, 2025, the Clerk of the Court entered default against the Defendant and issued a Notice of Default, notifying the Defendant that they had "(30) days from

4

this date to file a motion to vacate the order of default." (ECF Nos. 8, 9).

On July 28, 2025, Judge Chuang issued an Order directing the Plaintiffs to file and serve on the Defendant a Motion for Default Judgment within fourteen days of the Order, or show cause as to why such motion would be inappropriate. (ECF No. 10).

On August 11, 2025, in compliance with Judge Chuang's order, Plaintiffs filed a "Motion for Entry of Default Judgment" (the "Motion") and a memorandum in support. (ECF Nos. 11, 12). In addition, Plaintiffs appended: (a) a declaration from Terriea Smalls ("Ms. Smalls"), Trustee and Business Manager/Financial Secretary Treasurer, and the following documents: (i) Trust Agreements and Amendments to the same; (ii) agreements between the parties; (iii) remittance reports from April 2024 through March 2025; (iv) the Guidelines; (v) spreadsheets showing the amounts of contributions owed, the interest accrued, and the liquidated damages associated therewith for the period of July 2024 through June 2025; (b) a declaration and documents from Diana R. Cohn, Esq. related to attorneys' fees and costs; and (c) a summary of damages. (ECF Nos. 12-1 through 12-3). To date, the Defendant has not filed a responsive pleading, or otherwise sought to defend against the instant lawsuit.

## II.   DISCUSSION

### A.   Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6).

If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment.  *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

In this case, more than seven months have passed since the Defendant was served the Complaint, more than six months have passed since the Plaintiffs filed the Motion for Clerk's Entry of Default, and more than three months have passed since the Plaintiffs filed the Motion for Default Judgment.  (*See* ECF Nos. 1, 7, 11).  Defendant has neither filed an opposition nor otherwise defended against this case.  Plaintiffs filed an affidavit of service demonstrating that the Complaint, Summons, and supporting documents were served via a private process server upon the Defendant or a representative authorized to accept service.  (ECF No. 6).  Therefore, I find that the Defendant has been available to respond or defend against this case, yet has failed to do so.  Thus, I recommend that default judgment be entered.

### B. <u>Damages</u>

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading.  Fed. R. Civ. P. 8(b)(6).  "With respect to a default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to

contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011). If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required"). The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

1. *Contributions and Working Assessments/Dues*

Plaintiffs assert that the Defendant is delinquent in making contributions for: (1) the months of June 2024 through March 2025 to the Local 5 Benefit Funds; (2) the months of July 2024 through March 2025 to the National Benefit Funds; and (3) the months of June 2024 through March 2025 to the Industry Funds. In addition, Plaintiffs assert that the Defendant is delinquent in paying working assessments/dues for the months of June 2024 through March 2025 to the Local Union No. 5. (ECF No. 12-1, "Decl." ¶¶ 18-25; Decl., Exhibit 10).

I find that the applicable ERISA provisions, the Trust Agreements establishing the Local 5 Benefit Funds, National Benefit Funds, and Industry Funds, and Agreement required the Defendant to have made timely contributions. 29 U.S.C. § 1145 (1980) of ERISA requires that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

I find that the Plaintiffs are considered multi-employer plans, because they are multi-employer pension benefit plans, as defined by 29 U.S.C. §§ 1002(2) and (3). (Decl. ¶¶ 3, 5, 6). In addition, the record demonstrates that the Defendant is a party to the Agreement binding it to the Trust Agreements and Guidelines governing the Local 5 Benefit Funds, National Benefit Funds, and Industry Funds. (*Id.*). By signing the Agreement, the Defendant accepted the terms therein and the terms of the Trust Agreements and Guidelines. (*Id.*). I further find that the Trust Agreements and Guidelines governing the Local 5 Benefit Funds, National Benefit Funds, and Industry Funds obligated the Defendant to make contributions based upon payroll generated for each covered employee. (*See* Decl., Exhibits 1-3).

In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action. *See* 29 U.S.C. §§ 1132, 1145. If a plaintiff prevails in its action, a district court is then required to award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

The Supreme Court has explained that a plan's ability to bring forth legal action as "an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). In interpreting a collection action arising under 29 U.S.C. § 1145, the Fourth Circuit has reasoned that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents," because this "puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). I find that Plaintiffs have the right to collect unpaid contributions from the Defendant.

In addition, pursuant to Sections 301(a) and (c) of the Labor-Management Relations Act working assessments/dues are recoverable. 29 U.S.C. §§ 185(a), 185(c).

### 2. *Specific Recovery Sought*

As permitted by 29 U.S.C. § 1132(g), Plaintiffs seek a sum in the amount of $472,960.75 for unpaid contributions, unpaid working assessments/dues, liquidated damages, interest, and attorneys' fees and costs as further broken down below.

#### a. Local 5 Benefit Funds

As it relates to the Local 5 Benefit Funds, Plaintiffs seek: (1) unpaid contributions for the months of June 2024 through March 2025 in the amount of $197,292.77; (2) unpaid contributions for the months of April 2025 through June 2025 in the amount of $67,736.82; (3) liquidated damages in the amount of $39,754.44, which represents 15% of late contributions and delinquent contributions due and owing for the months of June 2024 to June 2025; and (4) $15,966.16 in accrued interest assessed at the rate of 10% *per annum*. (Decl. ¶¶ 21, 24, 29, 31, 34).

#### b. National Benefit Funds

As it relates to the National Benefit Funds, Plaintiffs seek: (1) unpaid contributions for the months of July 2024 through March 2025 in the amount of $58,279.71; (2) unpaid contributions for the months of April 2025 through June 2025 in the amount of $21,369.10; (3) liquidated damages in the amount of $8,109.01, which represents the sum of 10% (as allowed under the National Pension Fund) and 20% (as allowed under the International Training Fund) of late contributions and delinquent contributions due and owing for the months of July 2024 to June 2025; and (4) $5,582.35 in accrued interest assessed at the rate of 12% *per annum*. (Decl. ¶¶ 21, 25, 27, 28, 32, 35, 36).

c. Industry Funds

As it relates to the Industry Funds, Plaintiffs seek: (1) unpaid contributions for the months of June 2024 through March 2025 in the amount of $7,649.98; (2) liquidated damages in the amount of $1,147.50 which represents 15% of late contributions and delinquent contributions due and owing for the months of June 2024 to March 2025; and (3) $570.53 in accrued interest assessed at the rate of 10% *per annum*. (Decl. ¶¶ 21, 40; Decl., Exhibit 10).

d. Local Union No. 5

As it relates to Local Union No. 5, Plaintiffs seek: (1) unpaid working assessments/dues for the months of June 2024 through March 2025[1] in the amount of $33,283.89; (2) liquidated damages in the amount of $4,992.58 which represents 15% of unpaid working assessments/dues; and (3) $2,521.67 in accrued interest assessed at the rate of 10% *per annum*. (Decl. ¶¶ 21, 38, 39; Decl., Exhibit 10).

e. Totals for Unpaid Contributions and Working Assessments/Dues

Plaintiffs assert that the Defendant owes contributions: (1) for the months of June 2024 through March 2025 in the amount of $255,572.48 ($197,292.77 to Local 5 Benefit Funds, $58,279.71 to the National Benefit Funds[2], and $7,649.98 to the Industry Funds); (2) for the months of April 2025 through June 2025 in the amount of $67,736.82 to the Local 5 Benefit Funds; and (3) for the months of April 2025 through June 2025 in the amount of $21,369.10 to the National Benefit Funds. In addition, Plaintiffs assert that the Defendant owes unpaid working assessments/dues for the months of June 2024 through March 2025[3] in the amount of $33,283.89

---

[1] Although the Plaintiffs make reference to unpaid working assessments/dues for the months of April 2025 through June 2025, they are not seeking an award or judgment as "the amount of working assessments/dues past due for these months is unknown because of [the Defendant's] failure to submit reports identifying hours worked and amounts owed. (Decl. ¶ 38).
[2] For the months of July 2024 through March 2025 only.
[3] *See, supra,* n. 1.

10

to Local Union No. 5.

I reviewed all of Plaintiffs' supporting documentation to make my findings and recommendations. I find that Plaintiffs' request for unpaid contributions and working assessments/dues is supported by a declaration from Ms. Smalls and exhibits. (ECF No. 12-1). Ms. Smalls reviewed the Trust Agreements and Guidelines, and, in accordance with them, calculated the total amount of contributions and working assessments/dues owed for each month by reviewing the reports previously submitted by the Defendant. (Decl. ¶¶ 3-25, 38, 41; Decl., Exhibit 10). I also credit Plaintiffs' spreadsheet, which provides a monthly breakdown of the contributions owed to each respective benefits fund and working assessments/dues owed to Local Union No. 5. (ECF No. 12-3).

Defendant has not refuted the Plaintiffs' evidence because Defendant has failed to file a responsive pleading. Thus, I recommend an award to the Plaintiffs for unpaid contributions and working assessments/dues in the amount of $385,612.27, as reflected below:

| Fund or Union | Award for unpaid contributions or working assessments/dues | Date Range |
|---|---|---|
| Local 5 Benefit Funds | $197,292.77 | June 2024 through March 2025 |
| Local 5 Benefit Funds | $67,736.82 | April 2025 through June 2025 |
| Total for the Local 5 Benefit Funds | $265,029.59 | |
| National Benefit Funds | $58,279.71 | July 2024 through March 2025 |
| National Benefit Funds | $21,369.10 | April 2025 through June 2025 |
| Total for the National Benefit Funds | $79,648.81[4] | |
| Industry Funds | $7,649.98 | June 2024 through March 2025 |

---

[4] Adding the unpaid contributions for July 2024 through March 2025 ($58,279.71) and April 2025 through June 2025 ($21,369.10), for the National Benefits Funds, gives you a sum of $79,648.81. (*See* Decl. ¶¶ 21, 25). Plaintiffs' chart reflects a sum in the amount of $79,648.80 (adding $78,207.56 + $1,441.24), a difference of $0.01. (*See* ECF No. 12-3).

| Total for the Industry Funds | $7,649.98 | |
|---|---|---|
| Local Union No. 5 | $33,283.89 | June 2024 through March 2025 |
| Total for Local Union No. 5 | $33,283.89 | |
| **GRAND TOTAL** | **$385,612.27** | |

    f.   Liquidated Damages

Plaintiffs request liquidated damages in the amount of: (1) $39,754.44 to Local 5 Benefit Funds, which represents 15% of late contributions and delinquent contributions due and owing for the months of June 2024 to June 2025; (2) $8,109.01 to the National Benefit Funds, which represents the sum of 10% (as allowed under the National Pension Fund) and 20% (as allowed under the International Training Fund) of late contributions and delinquent contributions due and owing for the months of July 2024 to June 2025; (3) $1,147.50 to the Industry Funds which represents 15% of late contributions and delinquent contributions due and owing for the months of June 2024 to March 2025; and (4) $4,992.58 to the Local Union No. 5 which represents 15% of unpaid working assessments/dues. (Decl. ¶¶ 26-32, 39-41).

Under ERISA, a prevailing party shall be entitled to liquidated damages, which "can be awarded at the greater amount of either: (1) the [accrued] interest on delinquent contributions; or (2) the 'liquidated damages provided for under the plan and not in excess of 20 percent' of the delinquent contributions." *Trustees of the Nat'l Elec. Benefit Fund v. Loga Holding, LLC*, Civ. No. PWG-21-2917, 2022 WL 3100759, at *3 (D. Md. Aug. 4, 2022) (citing 29 U.S.C. § 1132(g)(2)(C)(i)-(ii)).

Here, the record reflects that Plaintiffs are seeking liquidated damages per the rate set forth in the Trust Agreements. (Decl. ¶¶ 26-32, 39-41). I compared the total amount of liquidated damages assessed to the total amount of unpaid contributions. I find that the requested amounts

of liquidated damages, at the rate set forth in the Trust Agreements, do not exceed what is permitted by statute, as the Trust Agreements allow for a recovery of 20% of the delinquent contributions. (*Id.*).

I find that Plaintiffs' damages request is supported by a declaration from Ms. Smalls and exhibits. (ECF No. 12-1). Ms. Smalls reviewed the Trust Agreements and Guidelines and, in accordance with them, calculated the total amount of liquidated damages owed for each month to each respective fund by reviewing the reports previously submitted by the Defendant. (Decl. ¶¶ 26-32, 39-41; Decl., Exhibit 10). I also credit Plaintiffs' spreadsheet, which provides a monthly breakdown of the liquidated damages owed to each respective fund. (ECF No. 12-3).

As such, I recommend an award of liquidated damages to the Plaintiffs in the amount of $54,003.53, as reflected below:

| Fund or Union | Award for Liquidated Damages | Interest Rate |
| --- | --- | --- |
| Local 5 Benefit Funds | $39,754.44 | 15% |
| National Benefit Funds | $8,109.01 | 10% (National Pension Fund) 20% (International Training Fund) |
| Industry Funds | $1,147.50 | 15% |
| Local Union No. 5 | $4,992.58 | 10% |
| **TOTAL** | **$54,003.53** | |

    g. <u>Accrued Interest on Unpaid Contributions and Working Assessments/Dues</u>

Plaintiffs claim accrued interest in the amounts of: (1) $15,966.16 assessed at the rate of 10% *per annum* to the Local 5 Benefit Funds; (2) $5,582.35 assessed at the rate of 12% *per annum* to the National Benefits Funds; (3) $570.53 assessed at the rate of 10% *per annum* to the Industry Funds; and (4) $2,521.67 assessed at the rate of 10% *per annum* to the Local Union No. 5. (Decl. ¶¶ 33-36, 39-41). The ability to assess interest on late contributions is found in 29 U.S.C. §

1132(g)(2)(C)(i), which states that "interest on unpaid contributions shall be determined by using the rate provided under the plan."

Here, there is undisputed evidence that the Defendant's unpaid contributions and working assessments/dues are delinquent. Therefore, Plaintiffs are entitled to interest assessed on the unpaid total for these months. I find that Plaintiffs' request for interest on unpaid contributions and working assessments/dues is supported by a declaration from Ms. Smalls and exhibits. (ECF No. 12-1). Ms. Smalls reviewed the Trust Agreements and Guidelines, and, in accordance with them, calculated the total amount of interest owed for each respective fund. (Decl. ¶¶ 33-36, 39-41; Decl., Exhibit 10). I also credit Plaintiffs' spreadsheet, which provides a calculation of interest owed to each respective benefits fund and to Local Union No. 5. (ECF No. 12-3).

Accordingly, I recommend an award to the Plaintiffs for accrued interest in the amount of $24,640.71, as reflected below, plus any further accrued interest consistent with each respective fund's Trust Agreement and Guidelines for computing interest on unpaid contributions upon date of payment. *See* 29 U.S.C. § 1132(g)(2)(E) ("the court shall award such other legal or equitable relief as [it] deems appropriate").

| Fund or Union | Award for Interest | Interest Rate *per annum* |
|---|---|---|
| Local 5 Benefit Funds | $15,966.16 | 10% |
| National Benefit Funds | $5,582.35 | 12% |
| Industry Funds | $570.53 | 10% |
| Local Union No. 5 | $2,521.67 | 10% |
| **TOTAL** | **$24,640.71** | |

h. <u>Attorneys' Fees and Court Costs</u>

The statute, 29 U.S.C. § 1132(g)(2)(D), mandates that a district court award "reasonable attorney's fees and costs of the action," where, as here, the requesting party prevails. In determining an award of attorney's fees, the "lodestar" approach, which is examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the most appropriate method for the Court to utilize. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Ideal Insulation, Inc.*, *supra,* 2011 WL 5151067, at *6; *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Professional Painting Inc.*, Civ. No. WDQ-11-172, 2011 WL 3744123, at *7 (D. Md Aug. 23, 2011); *see also Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).

A plaintiff "must show that the number of hours for which he [or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, Civ. No. NKM-07-65, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008). In this District, courts often begin their analysis with "United States District Court for the District of Maryland: Local Rules, Appendix B, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" (D. Md., Dec. 1, 2025) ("the Guidelines" or "Loc. R. App. B").

The Fourth Circuit has recently held that a court "may consider, but is not bound by" the Guidelines. *De Paredes v. Zen Nails Studio, LLC,* 134 F.4th 750, 754 (4th Cir. 2025)(citing *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)). Thus, when a court is faced with a fee petition and is determining whether a fee rate is "reasonable," it may not treat the Guidelines as "presumptively reasonable and require special justification to deviate from [them]." *De Paredes*, 134 F.4th at 751 (further citations omitted). Rather, a court

15

"must consider all relevant evidence to determine the prevailing market rates in the relevant community [. . .] including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its 'own personal knowledge." *(Id.)*.

In this case, Plaintiffs request payment of attorneys' fees in the amount of $8,004.25. The undersigned has analyzed all of the supporting documentation submitted by Plaintiffs, the hourly rates set forth in the Guidelines, and the relevant caselaw.

### 1. Hourly Rate

In support, Plaintiffs offer a declaration from Diana R. Cohn, Esq. ("Ms. Cohn"). (ECF No. 12-2, pp. 1-2). Mr. Cohn's declaration reflects that Jorge Salles Diaz, Esq. ("Mr. Diaz") also generated work related to this case. In the declaration, the background and experience of the attorneys is set forth in great detail, and there are statements that the hourly rates are reasonable or are in line with rates previously charged by counsel. Ms. Cohn graduated from the Georgetown University Law Center in 2013, has been a member of the Bar for approximately 12 years, and is currently a partner with the law firm of O'Donoghue & O'Donoghue. Mr. Diaz graduated from Vanderbilt University School of Law in 2024, has been a member of the Bar for approximately one year, and is an associate with the same firm. (*Id.* at 1).

In December 2025, the Guidelines were revised such that they no longer contain a detailed matrix on suggested hourly rates. Loc. R. App. B. 3. (D. Md. 2025). Relatedly, there is now a reference to the Fitzpatrick Matrix,[5] and the notion that a court may apply a 5-20% reduction to reflect the difference between hourly rates for Washington, D.C. and Maryland. (*Id.*). That being said, the Guidelines also make clear that the factors identified in pertinent caselaw still govern. (*Id.*).

---

[5] The Fitzpatrick Matrix is available at https://www.mdd.uscourts.gov/sites/mdd/files/fitzpatrick-matrix.pdf.

Ms. Cohn's hourly rate of $317.00 is $437.00 less than the corresponding rate of $754.00 (for an attorney with twelve years of experience) according to the Fitzpatrick Matrix for Washington, D.C. (*See* Fitzpatrick Matrix, p. 1). Were the undersigned to apply a reduction of 20% to reflect the difference between hourly rates for Washington, D.C. and Maryland, Ms. Cohn's hourly rate of $317.00 would still be nearly half of the corresponding hourly rate of $603.20.

Mr. Diaz's hourly rate of $317.00 is $244.00 less than the corresponding rate of $561.00 (for an attorney with one year of experience) according to the Fitzpatrick Matrix for Washington, D.C. (*See* Fitzpatrick Matrix, p. 1). Were the undersigned to apply a reduction of 20% to reflect the difference between hourly rates for Washington, D.C. and Maryland, Mr. Diaz's hourly rate of $317.00 would still be $131.80 less than the corresponding hourly rate of $448.80.

In sum, given the declaration and materials provided by counsel, I find that the hourly rates requested are reasonable and consistent with *De Paredes*.

### 2. Hours Expended

Ms. Cohn submits a spreadsheet related to attorneys' fees. (ECF No. 12-2, p. 4). The spreadsheet reflects that from April 10, 2025 through August 6, 2025, Ms. Cohn billed Plaintiffs a total of 9.5 hours of work at the "negotiated" hourly rate of $317.00 per hour for a fee in the amount of $3,011.50; and Mr. Diaz billed Plaintiffs a total of 14.25 hours of work at the "negotiated" hourly rate of $317.00 per hour for a fee in the amount of $4,517.25. (*See* ECF Nos. 12-2, pp. 1-2; 12-2, Exhibit A). According to Ms. Cohn, the hours generated relate to investigation of the Plaintiffs' claims, drafting and filing of the Complaint, and preparing the motions related to default and default judgment. (*Id.*). While in this jurisdiction, counsel typically submit more detailed documentation, *see, e.g.,* Loc. R. App. B, ¶ 1.b., the undersigned finds sufficient

17

information to be able to determine the reasonableness of the hours sought. I find that a total of 23.75 hours is a reasonable amount of time expended for the work performed by Ms. Cohn and Mr. Daiz. *See Plyer*, *supra*, 902 F.2d at 277.

In sum, given the declaration and materials provided by counsel, I find that a request for $8,004.25 for attorneys' fees is reasonable.

### 3. *Costs*

Plaintiffs seek court costs of $405.00 (court filing fee) and $295.00 (private process server fees) for total costs in the amount of $700.00. (ECF No. 12-2 ¶¶ 6-8). In support of the request, Plaintiffs provide an invoice from the private process server. (ECF No. 12-2, Exhibit B). I find that this type of cost is ordinarily charged to a client and is reasonable out-of-pocket expense. In addition, by statute, Plaintiffs are entitled to such court costs. *See* 29 U.S.C. § 1132(g)(2)(D). The undersigned finds that the costs, including the filing fee for the Complaint, are compensable under the Local Rules (Loc. R. App. B., ¶ 4a.), and the United States District Court for the District of Maryland: Guidelines for Bills of Costs, Section II.B.

Accordingly, I recommend an award of $8,004.25 in attorneys' fees and $700.00 in court costs.

## III. CONCLUSION

In sum, I respectfully recommend that the Court, **GRANT** Plaintiffs' "Motion for Entry of Default Judgment" against the Defendant. (ECF No. 11). I further recommend that the district court enter judgment in favor of the Plaintiffs in the following amounts:

1) Unpaid contributions and working assessments/dues in the amount of $385,612.27;

2) Liquidated damages in the amount of $54,003.53;

3) Interest in the amount of $24,640.71 plus interest accrued at the applicable rate *per annum* upon the date of payment;

4)  Attorneys' fees in the amount of $8,004.25; and

5)  Court costs in the amount of $700.00.


Dated: December 22, 2025                              /s/
                                            The Honorable Gina L. Simms
                                            United States Magistrate Judge